UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHAD STELZER,

        Plaintiff,

v.                                               Case No. 22-C-457

STATE FARM FIRE AND CASUALTY COMPANY,

        Defendant.

---

## DECISION AND ORDER

---

This diversity action arises out of a dispute between Plaintiff Chad Stelzer and his property insurer, Defendant State Farm Fire and Casualty Company. Stelzer filed a claim for damage to the roof of his house allegedly caused by wind. State Farm concluded that the damage did not exceed the amount of his deductible and denied the claim. Stelzer then filed suit in Manitowoc County Circuit Court, alleging claims of breach of contract, bad faith, and statutory interest. State Farm removed the case to federal court. The court bifurcated the claims and stayed discovery on the bad faith claim pending disposition of the breach of contract claim. The case is before the court on State Farm's motion to exclude the testimony of Stelzer's proposed expert witness and for summary judgment on his breach of contract claim. For the following reasons, State Farm's motions will be granted and the case dismissed.

## BACKGROUND

Stelzer alleges that on December 15, 2021, a "hail-producing storm with very high winds . . . caused damage to [his home] including, but not limited to, wind damage to the entire field of roof shingles, sections of fascia, and sections of the soffits." Def.'s Proposed Findings of

Fact (DPFOF) ¶ 1, Dkt. No. 25 (quoting Compl., Dkt. No. 1-1 ¶¶ 7–8). At issue here is his claim for damage to his roof. Stelzer filed a claim with State Farm, and based on the report of its field agent, State Farm determined that storm-related damage did not exceed Stelzer's deductible. State Farm advised Stelzer of its conclusion in a January 24, 2022 letter, which also included State Farm's damage evaluation and estimate. *Id.* ¶ 3.

Stelzer disputes State Farm's conclusion that his roof did not sustain greater roof damage. He contends that State Farm's investigation "did not involve checking to see whether the shingles had in fact lifted up" due to the wind. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 3, Dkt. No. 32. He contends that the damage caused by the storm is so extensive that the entire roof must be replaced.

The insurance policy at issue is Policy No. 49-CR-A760-4, with effective dates of December 4, 2021, through December 4, 2022 (the Policy); the storm took place within that date range. DPFOF ¶¶ 40–41. The Policy covers damage to a dwelling arising from "accidental direct physical loss," unless the loss is excluded or limited by other provisions in the Policy. *See* the Policy, Ex. F, Dkt. No. 23-6 at 16. There is no dispute that the Policy covers roof damage caused by wind. However, the Policy does not cover "wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown," nor does it cover "defect, weakness, inadequacy, fault or unsoundness in . . . design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction." *Id.* at 19 & 22.

To prove his claim, Stelzer intends to offer the testimony of Brad Walschinski, a Project Manager and Exterior Specialist at ARC Contracting (ARC), an exterior construction company. Stelzer has identified Walschinski as "an expert who would 'testify regarding his observations of the condition of the roof and storm related damage,'" as well as the cost of repair. DPFOF ¶ 9

2

(quoting Pl.'s Expert Witness Disclosure and Walschinski Report, Ex. D at 1, Dkt. No. 23-4). Walschinski's report, in addition to photographs of the house and an itemized list of the labor and materials needed for the repair, offers the following opinion:

> I inspected Chad Stelzer's roof and there was significant damage to it from the recent wind storm. Most of the shingles lifted up and did not have a seal on them anymore. The shingles are lifted from row to row which signifies wind damage. I do not suggest a repair but a full roof replacement.

Walschinski Report at 3, Dkt. No. 23-4.

State Farm has moved for an order precluding Walschinski from offering any expert testimony other than the amount ARC quoted Stelzer for a complete roof replacement. State Farm argues that Walschinski is not qualified under Rule 702 of the Federal Rules of Evidence to offer any opinion as to the extent of any damage to his roof that may have been caused by wind. Absent any admissible evidence that the wind caused the damage to his roof, State Farm argues that Stelzer cannot prevail on his breach of contract claim. And with the breach of contract claim gone, his claim that State Farm acted in bad faith in denying his claim fails as well. On this basis, State Farm has also moved for summary judgment. Dkt. Nos. 21 & 24.

**ANALYSIS**

**A. Motion to Exclude Plaintiff's Expert**

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 permits a witness "who is qualified as an expert by knowledge, skill, experience, training or education" to testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

3

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. That standard applies "to all experts, not just to 'scientific' ones." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999); *see also Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013). In its "gatekeeper" role, the district court "must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (citation and quotation marks omitted). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

With respect to an expert's qualifications, the question "is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for [him] to answer a specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (citation and quotation marks omitted). "In assessing reliability, the role of the court is . . . to examine the methodology the expert has used in reaching his conclusions." *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019) (citation and quotation marks omitted). With respect to reliability, *Daubert* sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the scientific community. 509 U.S. at 593–94. There is no requirement that courts rely on each factor. *Kumho Tire Co., Ltd.*, 526 U.S. at 150. In assessing the admissibility of expert opinions, courts do not focus on "the ultimate correctness of the expert's conclusions," *Schultz v. Akzo Nobel Paints, LLC*,

4

721 F.3d 426, 431 (7th Cir. 2013), but "solely on principles and methodology," *Daubert*, 509 U.S. at 595.

Applying these principles to the issue before it, the court concludes that Walschinski is not qualified by education, training, or experience to offer opinion evidence under Rule 702 on whether the wind caused any damage to Stelzer's roof. Walschinski has worked for four years as a full-time commission salesman for ARC, a firm that performs exterior construction, including roof replacements. His job is to assess customers' homes and provide quotes for repairs or replacement of exterior components, including roof, siding, gutters, windows, doors, soffit, and fascia. In other words, his job is to assess homes to determine what repairs or improvements may be offered and the costs thereof; it is not his job to determine the cause of any damage he observes. His training consisted of a general overview of how ARC installed roofing systems, windows, siding, and other exterior components. He received no training or education in determining the cause of damage to the exterior of a home, other than general comments by ARC's owner and installers, whose own education, training, and experience is undisclosed.

As for his previous education and experience, Walschinski earned post-high school degrees from Fox Valley Technical College in Electronics Technology and from the University of Wisconsin-Oshkosh in accounting. As a young man (age 18–23), he worked summer jobs while attending school where he assisted with framing in residential construction, but he never installed roofing shingles, windows, siding, gutters, or sheathing. His other employment history includes approximately three years as a low-voltage electrical installer in commercial buildings; approximately eight years working as an electrical engineer for a company that performed services for Oshkosh Corporation; a couple of years working as an independent accountant; and three years working as a sales consultant for Bergstrom Automotive selling foreign and used cars. Absent any

5

education, training, or experience in determining the cause of damage to asphalt roofing shingles, Walschinski is not qualified to offer his opinion under Rule 702 that Stelzer's roof must be entirely replaced due to wind damage.

Walschinki's opinion testimony on the question of whether the wind caused damage to Stelzer's roof is also inadmissible because it is neither based on sufficient facts or data, nor is it the product of a reliable methodology. Walschinski made no independent investigation as to what the wind conditions were on the day the alleged damage occurred. (Although Stelzer testified that he believed that there were wind gusts up to 100 miles per hour, National Weather Service records submitted by the defense indicate that wind speeds on December 15, 2021, were less than 50 mph in the Manitowoc area.) Walschinski made no effort to see if other homes experienced similar damage on that day. Instead, he relied entirely upon Stelzer's report that the wind speed was extremely high and he saw the shingles lift up off his roof. Walschinski's own inspection of the roof confirmed that a quarter to a half of the shingles on every slope of the roof could be lifted up and did not appear to have a seal on them. Walschinski did not know who manufactured the shingles, when they were installed, who installed them, whether they did so properly, or when Stelzer had purchased the home.

Importantly, Walschinski made no effort to rule out other possible explanations for the failure of the shingles to adhere. He acknowledged that he had previously encountered a roof where the shingles lifted up because the adhesive material did not seal properly after installation. Brad Walschinski Dep. at 50:24–51:03, Ex. A, Dkt. No. 23-1. In addition, Andrew Knutson, the structural engineer retained by State Farm as an expert, noted in his report that "degradation will also occur over time due to aging and weathering that will affect the adhesion of the self-adhering sealing strip as well." Report and C.V. of State Farm Expert Andrew Knutson, Ex. E at 5, Dkt.

6

No. 23-5. But Walschinski did nothing to rule out other possible causes of what Plaintiff had observed. In other words, he made no effort to determine whether the wind caused the shingles to separate or whether the wind merely revealed the lack of adhesion that was already present:

> Q. Did you do anything in this case to rule out the possibility that the shingles were lifting because the adhesive strip did not seal properly after installation?
>
> A. No, I did not.
>
> Q. Can you say whether or not the shingles were lifting in this case because the seal simply did not stick down properly after installation?
>
> A. No.

Walschinski Dep. at 50:08–16.

Knutson also explained in his report that his inspection showed no signs of shingle delamination which occurs when the adhesive seal between the shingles is torn apart by the wind. "Shingle delamination," Knutson explained, "would show torn remnants of the underlying or above lying shingle remaining." Knutson Report at 5, 15. When asked if he observed "any tearing underneath where the adhesive strips would have at one point in time been glued down," Walschinski responded, "Not that I recall." Walschinski Dep. 50:09–12. In sum, Walschinski offers no reason to believe that his opinion that Stelzer's roof must be entirely replaced due to wind damage, as opposed to poor installation or age, is based on anything other than his own say-so.

In response to State Farm's argument that Walschinski is not qualified to offer his opinion on wind damage to his roof, Stelzer focuses first on the qualifications of James Dinger, the State Farm field adjuster who investigated his initial claim. But Dinger's qualifications are not before the court, either because State Farm has not identified him as an expert or because Stelzer has

7

elected not to challenge the admissibility of his opinion. Whether Dinger is qualified to offer opinions under Rule 702 is therefore irrelevant to the question of whether Walschinski is.

Stelzer also cites two other district court decisions denying State Farm motions for summary judgment in similar cases: *Holder v. State Farm Fire and Casualty Co.*, No. 20-cv-557-TSL-RPM, 2021 WL 4929493 (S.D. Miss. Oct. 10, 2021), and *Teel v. State Farm Fire and Casualty Co.*, No. CIV-21-1164-D, 2022 WL 17566513 (W.D. Okla. Dec. 9, 2022). Neither case is persuasive. *Holder* involved the question of whether hail damage required repair or replacement of the homeowner's roof. The district court summarily rejected State Farm's argument that the individual designated by the plaintiff as an expert "in the fields of residential and commercial roof repair or replacement, evaluation of residential roof damage caused by weather events, including hail, and the cost of residential roof repair or replacement due to damage cause by weather events, including hail" was not qualified to offer his opinion that a complete roof repair replacement of the plaintiff's roof was necessary due to hail damage. *Holder*, 2021 WL 4929493, at *8. The district court's decision is unpersuasive here because there is no discussion of the expert's qualifications. The court simply noted that it had "reviewed [the expert's] report and those portions of his deposition testimony submitted by the parties, including information relating to his qualifications and the data on which he relied and the methods by which he arrived at his opinions, and [found] that his proposed testimony is both relevant and reliable." *Id.* Moreover, unlike this case, the issue in *Holder* was not whether the wind caused damage to the roof. The issue there appears to have been whether the damage admittedly caused by a hailstorm required repair or replacement of the roof. In this case, Walschinski may be qualified to testify that the roof needs to be replaced and the cost of replacement, but for the reasons set forth above, he is not qualified to testify that replacement is needed due to wind damage.

*Teel*, the other case on which Stelzer relies, did involve wind damage, but the damage was far more extensive and obviously caused by a windstorm. Shingles were completely blown off the home in that case, and there was water leakage in the interior. *Teel*, 2022 WL 17566513, at *2. State Farm paid for the replacement of 156 shingles but took the position that shingles that had simply become unsealed in the storm were not damaged and did not require replacement. *Id*. Importantly, and unlike this case, no *Daubert* issue was raised. Given the evidence before it, the district court concluded that a factual question remained and denied State Farm's motion for summary judgment. Because there was no discussion of the qualifications or admissibility of the opinion testimony intended to be offered, *Teel* is likewise inapposite.

The balance of Stelzer's response to State Farm's motion to exclude Walschinski's causation testimony ignores the requirements of Rule 702 and *Daubert*. He offers no facts or argument to meet his burden of demonstrating that Walschinski is qualified to offer a causation opinion or that the methodology used by Walschinski to arrive at his opinion is reliable. Instead, he seems to decry the fact that when he accused State Farm of bad faith in breaching the Policy and sued it for compensatory and punitive damages, State Farm hired a professional engineer with experience in investigating damage caused by wind, hail, and storm events to perform an analysis and testify in its defense. Stelzer, or his attorney, seems to believe that because Stelzer lacks the financial resources of an insurance company, the rules of evidence governing the admissibility of expert testimony should not be applied to him. That is not the law; nor is it fair. As State Farm notes, Stelzer filed a lawsuit asserting claims that, if proven, would entitle him to not only the new roof he seeks but also hundreds of thousands of dollars in punitive damages and recovery of his costs and attorney's fees. If his claims truly have merit, investing what is needed to retain a qualified expert is a matter of common sense. Having failed to do so, State Farm's motion to

9

exclude Walschinski from testifying that Stelzer is in need of a new roof because of wind damage is granted.

## B. Motion for Summary Judgment

Summary judgment shall be granted when the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences from it in the light most favorable to the nonmoving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In order to prevail on his claim against State Farm for breach of its Policy, Stelzer must prove that State Farm failed to pay a loss covered by the Policy. *Day v. Allstate Indem. Co.*, 2011 WI 24, ¶ 26, 332 Wis. 2d 571, 798 N.W.2d 199. As noted above, the Policy provides insurance coverage for Stelzer's home for damage that arises from "accidental direct physical loss" unless the loss is excluded or limited by other provisions of the Policy. DPFOF ¶ 42. The Policy does not provide coverage for "wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown." *Id.* ¶ 43. The Policy also does not provide coverage for "defect,

weakness, inadequacy, fault or unsoundness in . . . design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction." *Id.* ¶ 44.

Stelzer contends that the Policy covers the cost of a new roof because his old roof was irreparably damaged by wind. In order to prevail at trial, Stelzer must prove that wind was the cause of the damage he claims his roof sustained. State Farm contends that for a jury to find in Stelzer's favor, he must have admissible expert testimony that wind caused the alleged damage. *See Payne v. Milwaukee Sanitarium Found., Inc.*, 81 Wis. 2d 264, 276, 260 N.W.2d 386 (1977) ("Expert testimony should be adduced concerning those matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study or experience."). While asphalt roofing shingles are not complex machines, determining whether the failure of shingles to adhere to one another is due to wind or age or improper installation is not within the realm of the ordinary experience of most people. It requires some degree of special learning, study, or experience. The only evidence Stelzer has as to causation is the opinion of Walschinski. Since Walschinski's opinion does not meet the requirements of Rule 702, State Farm contends that Stelzer is unable to meet his burden and his breach of contract claim must fail.

Stelzer does not dispute State Farm's contention that under the facts of this case, expert testimony is necessary to support his breach of contract claim. Stelzer has therefore waived any argument that expert testimony is not required to prove cause. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver."). Instead, Stelzer argues that Walschinki's opinion should be allowed and focuses on State Farm's motivation and litigation tactics. For the reasons already explained, these arguments are rejected.

11

Stelzer also argues that the report of State Farm's expert, Knutson, supports his contention that the wind caused his shingles to lose their adhesion. It does not. Although Knutson states in his report that "a considerable [number] of shingles on the roof are loose with no adhesion of the factory self-adhered sealing strip to the below lying shingles," he notes that "no roof shingle delamination . . . was found during the review of roof shingles." Knutson Report at 4–5. This is important because Knutson explained that shingle delamination, which can be caused by high winds, is evidenced by "torn remnants of the underlying or above lying shingle remaining." *Id.* at 5. The absence of shingle delamination and evidence of improper installation supports Knutson's conclusion that there was no wind damage. *Id.*

Stelzer also argues that the absence of creasing on the shingles, as depicted in Figure 16 of Knutson's report, suggests that the lack of adhesion was due to wind damage. Pl.'s Br. in Opp'n. at 5, Dkt. No. 30 ("Mr. Knutson's report indicates that, if this had been a chronic cyclic problem, you would see creasing on the shingles and you do not see that on Mr. Stelzer's roof."). But Knutson drew no such conclusion. He noted in his report that "[c]reased shingles happen when there is no bond, and the wind cyclically folds over the shingle tabs without tearing." Knutson Report at 5. Here, despite the absence of creased shingles, Knutson concluded that there was no wind damage.

In sum, Stelzer has no admissible expert testimony to meet his burden of proving his breach of contract claim. Walschinski's opinion on causation is not admissible under Rule 702, and Knutson's report concludes that there was no wind damage. Absent such evidence, Stelzer's breach of contract claim fails, and with the loss of his breach of contract claim, his bad faith claim also fails. *Brethorst v. Allstate Prop. and Cas. Ins. Co.*, 2011 WI 41, ¶ 65, 334 Wis. 2d 23, 798

N.W.2d 467 (holding that "some breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured").

## CONCLUSION

For the foregoing reasons, State Farm's motion to exclude the testimony of Stelzer's proposed expert witness (Dkt. No. 21) is **GRANTED**. Likewise, State Farm's motion for summary judgment on Stelzer's breach of contract claim (Dkt. No. 24) is **GRANTED**. The case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of March, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge